May it please the Court. My name is David Berrari. I represent the appellant JT Myore. He asks that his convictions for carjacking and firearms offenses be vacated, that his conviction for second-degree murder be remanded for a new trial, and that his sentence be vacated and remanded for resentencing. I'd like to begin the focus of this discussion on the homicide case, in particular the jury instruction issues that created a due process violation in this case. You know, I understand that, but do you even get to them, the due process problem? Because this was a stepped jury instruction where it says deliberate first on second-degree murder, and second-degree murder requires you to show malice of forethought. And so once you find malice of forethought, isn't that mens rea established such that whatever you instructed on the lesser-included offense, you know, it doesn't matter? And, you know, and you think about it. If you had prevailed and the lesser-included never having been given, you couldn't complain at all about this verdict, right? I mean, at least on the second-degree murder. Let's take that apart. Yeah, let's. When you have a second-degree murder allegation, so we're talking about 18 U.S.C. 1111 compared to 1112 with a voluntary manslaughter, they have opposing mens rea, right? You have malice on the one side, and you have heat of passion on the other. And those conflict. They negate each other, according to this Court's history. When you have that sort of conflicting, and this is coming out of Mullaney, the jury has to figure out which one it is, right? We have two statutes that are being alleged by the government. This is a lesser-included offense. This isn't an affirmative defense. This isn't in that area of law. We're talking about two conflicting legal theories raised by the government. The government has to carry its burden of proof that this is malice, not heat of passion. And so the due process issue arises because there is sufficient evidence in this record to support a conviction for voluntary manslaughter. That's what the district court recognized. When you have that. That's always true if the — if you're convicted of — if you're talking lesser-included offense, if you're — if you're convicted of the greater offense, obviously the evidence was sufficient for the lesser-included, wasn't it? Not necessarily here because they negate. And in the — I mean a true lesser-included, like manslaughter versus murder. Well, and in this true murder versus manslaughter, Mullaney says there's — there's this conflict between the two that has to be resolved by the jury. They have to decide whether it is malice or whether it was motivated by heat of passion. And the jury instruction does not provide that sort of triggering language in this step instruction that lets the jury consider the other alternative, as you recognize. And so — all right. So let me — let me see what you're saying because I want to make sure I'm hearing this right now. Sure. What you're arguing essentially is that even though the verdict form has a director that says deliberate on second-degree murder first, and only if you reach a verdict of not guilty, please answer the second question, that — that indeed the jury is supposed to be, in the course of their deliberations, they're not required to sort of bifurcate their discussions. That — that in reality, the discussion going on in the jury room should be, well, what have they proven for state of mind here? What's the — what's the — what was it? Heat of passion, was it malice of forethought? What — what's — what's the difference? That's what Martin requires. Okay. And there's — Martin actually says that? Well, what Martin is saying is that you have to consider these issues at the same time, right, because they're conflicting. That is the important point here. And I — I kind of break it down in my mind into what area of law we're in is the lesser included. What area we're in is there is evidence to support the voluntary manslaughter. And so we have to make the choice. The jury has to make the choice between the two. But third, we have the step instruction here, which doesn't provide for that because it focuses the jury's analysis on malice first, and they never reach the other issue of heat of passion. Loftin talks about this and breaks down that analysis and says it's — Say what? Say who? The Loftin case out of the Ninth Circuit and says, look, under Mulaney, you have to do this, particularly when you have a step instruction. That's also how the Nebraska court decided in the — I'm going to mispronounce this one — Eero Mwanya case, when they're talking about Roland Smith, because Nebraska went through this sort of reshaping of its murder statutes or its understanding of the murder statutes, because first it said malice and heat of passion don't really conflict, but then it changed it later in Roland Smith and said, wait a minute, they conflict, we have to, when we have a step instruction. What is our standard of review on this issue? Sure. It's a plain error issue. And I know the government has suggested that there's this conflict between the Fifth Circuit and the others. The issue is that where the stems from is the Fifth Circuit in Molina-Uribe said that malice and manslaughter don't conflict, heat of passion, and that's just not Eighth Circuit law. And in the Browner case that I submitted by the 28J letter, they said, oh, right, right, they do conflict. Malice is negated by heat of passion. So when you have a situation of malice versus heat of passion, like we have here, the jury has to decide the two. And once you jump into the realm of the step instruction. But what I do on issues like this, and I haven't done it here because we're not there yet, I look at the instructions conference and the closing arguments. Right. Now, if it's plain error review, I take it looking at the conference isn't going to tell me much. What about the closing argument? Well, the closing argument, the government actually argued. Doors. Whoever tried it for Mayor. The, I think the important part is what you're suggesting is he had to argue this distinction. That's shifting the burden to him. No, no. I want to know if the argument basically told the jury to do what the instruction didn't. No, because the government at the beginning of its argument says he was angered, he was. I don't care about the governments. I care about the defense argument. The defense. If you told a jury that you've got to decide whether it was malice or heat of passion, then you cured whatever was in the instruction. The defendant didn't argue that. Yeah. Didn't the defendant basically argue didn't do it? Yes. And so the argument on the heat of passion would have been inconsistent with didn't do it. And a tactical decision was made to say didn't do it. And there was no mention of heat of passion on the part of the defendant in the closing argument, was there? No. I don't recall. No. And so at that point, you know, a lot of times, you know, you can look at the argument and say everything was argued. It's just fine. The jury understood where they were at. But here for tactical reasons, that second argument was never made. And so there's two ways to look at it. You know, as if we're in plain error review, is it plain error that somebody didn't fix a situation that was never brought to the judge's attention nor argued? You know, and so how is the judge supposed to know that that was the fighting point? When the defense said at the outset, shouldn't allow this lesser included to even be offered, Judge, because the fighting point is who done it, not what was their motivation. That's not precisely the objection. Okay. The objection that was raised by the defense is this isn't the theory of the defense. That's different from this isn't a lesser included offense. This was the government's burden, government's lesser included offense. The government argued there was malice and there was heat of passion because he was motivated. He was angry. He heard about this molestation, the catalyst from Mayonne giving him the knife. The government argued both heat of passion and malice to support second degree murder. When the government makes that argument, then they have to decide whether it's both or one or the other. Right. And the jury instructions didn't do that. And so the question in plain error is, is there an error? Yes, there is. Mulaney, Martin establishes this error because of this. What's your best plain error case on this issue? The plain error case is the Lofton case. Pardon? Lofton. And that's Ninth Circuit? That's Tenth. Ninth. Ninth, I believe so. And then Lucina follows suit. Seventh Circuit follows suit. Fifth Circuit has essentially followed suit. They're all in the same position, particularly when you're looking at a step instruction. Eighth Circuit has dealt with it in the Nebraska context with Ira Muwanya, that case. Ira Muwanya, where they're discussing Roland Smith and that change that created a step instruction where it was separated. All of this law establishes when you have the step instruction, you have to put the language in the voluntary manslaughter part that it's not in the heat of passion. Here, the government bootstrapped by arguing that you can have both heat of passion and malice to support second degree murder. That's essentially what the instruction said. So there's prejudice to the jury's consideration, which is the third problem. There's also prejudice to Mr. Maior because he received a 42-year sentence when, if it's voluntary manslaughter, there's a maximum of 15 years. Now, the remedy here would be new trial. It would be a new trial. I'd suggest that, Your Honor, you have dealt with that issue of Martin in the Head case in footnote two. That's a decision from 2013. Hasn't been raised. Head from 2013. Footnote two, you talked about Martin in that decision and that it required a new trial when issues were separated out. And that's the unanimous across all of the circuits that have discussed this. When talking about Martin and these issues is you have to consider the two at the same time. Wasn't done here. Plainly an error. The government benefited from this misinstruction. I would ask to reserve the remainder of my time. However, I'd rely on the briefs for the remainder of our argument. Thank you. Thank you. Mr. Schroeder. May it please the Court. Benjamin Schroeder for the United States. I'd like to start off with the heat of passion issue and to just briefly go over the four United States Supreme Court cases that are pertinent here because I think it really guides our discussion. All right. So you're opening this up for rebuttal. I'm sorry. Well, if you argue something that wasn't argued by the main case, then you're opening it for rebuttal. The heat of passion issue. Which you're invited to. Well, the argument so far has been on the jury instruction issue. And that's of the heat of passion. So the heat of passion is the jury instruction here. So that's the exact same issue that was discussed in opening. And so the four cases that apply here are the first case is In re Winship, where the United States Supreme Court states the basic principle that the prosecution must prove beyond reasonable doubt every essential element of a crime. And then a few years later, in Mulaney v. Wilbur, the United States Supreme Court analyzed — Isn't this all in the briefs? It is, but I'd like to clarify what comes out of this. Well, clarify. But don't just give us what — don't give us orally what we've already read. Well, the Mulaney case this morning stands not just for manslaughter in general. It analyzed a main statute. And there, when two elements were found by the jury, the jury was then instructed to imply a third element, an essential element, malice. And so the Mulaney case is a very narrow case. And it's only in this burden-shifting framework where the government must prove beyond reasonable doubt the absence of a heat of passion defense. None of those burden shiftings are present here in the federal homicide statutes. And the reason why people can be mistaken about that is that Mulaney ended with a very broad phrase. Mulaney stated that in homicide prosecutions, prosecutors must prove the absence of a heat of passion. However, just two years later, in Patterson v. New York, the United States Supreme Court was very clear, and it narrowed Mulaney to just the facts of that case. And it stated that Mulaney really stands just for two propositions. First, that it reaffirmed in rewinship the requirement to prove every essential element. And also, in these schemes where there's burden shifting going on, where an essential element of the crime can be implied, that's when that rule applies. And so it narrowed that case significantly. And so following that was Martin v. Ohio. And in that case, the United States Supreme Court analyzed when a defense necessarily negates an essential element, whether or not it will require an additional instruction for the United States to prove beyond reasonable doubt a la Mulaney. And in that case, it said, no, that even if a defense negates an essential element, the United States does not have to prove the absence of that. And so that's where the Eighth Circuit has two inconsistent opinions. There is Flores v. State of Minnesota, which came out in 1990, just three years after Martin v. Ohio. And there's Irumwanwa v. Frakes, which came out in 2017. And it's the Flores v. State of Minnesota case that got it correct. It recognized that it was an intoxication defense case, and the burden was upon the defendant to prove, by preponderance, the intoxication defense. And it was argued there that intoxication necessarily negates an element of premeditation. And so because it does that, it cannot have the burden. And it cited, and the appellant cited Martin v. Ohio. But that case made clear, Flores made clear that Martin stands for the proposition that even when there's a defense that negates an essential element, there's nothing wrong, excuse me, there's nothing wrong with that. And Martin stated in a little bit of dicta that it would be a very different situation where if the jury were instructed that they could not consider evidence of this defense that negates an essential element. Because if you couldn't consider evidence of a defense that negates an essential element, it would be evidence of an essential element that the jury couldn't consider. So here in this case, none of that happened. And I would also note that there is no heat of passion defense here. J.T. Mayor not only didn't assert the heat of passion defense, he actively opposed it. He opposed the voluntary manslaughter instruction. And his testimony supports that as well. So the whole basis for this heat of passion instruction regards these salacious accusations from Mayon Lakota to Leon Lakota, accusing him of molesting their grandchildren. And J.T. Mayor testifies at trial, I didn't even hear that. And he also testifies at the time of the killing of Leon Lakota that he wasn't even there. He was sleeping. And so. So if we have the I didn't hear that statement, but there are the phone calls that basically said that, does that create a question for the jury? I mean, there's inconsistent testimony by the defendant here about what he said and what was his motivating factors at different points, right? And the government's argument here seems to be that once he took the stand and said, I didn't even hear that, that somehow means those other things can't be considered for the truth of the matter asserted. Well, let me clarify. So J.T. Mayor, so the argument here is that it was a heat of passion. So that night, he never heard it. Now, the phone call you're referencing, the 911 call where he admits to having killed Leon Lakota and the Facebook post where he admits to killing him because he was a child molester, J.T. Mayor testified that he learned about that far later. And so heat of passion. But it is a statement about his motivation, you know, the Facebook post, at least. Yes. And that was the whole government's case, that he was motivated by this, these accusations against Leon Lakota. Now, heat of passion is a sudden quarrel. Heat of passion, a sudden quarrel. And so his testimony. So his testimony fails as a matter of law if you consider his statements all the way across the board because they don't show a sudden heat of passion. It gets to plain error because he doesn't even make a defense here of heat of passion. And all these cases that we discuss, discuss defenses. And here, there is no heat of passion defense. And so when you look at plain error, how it affects the defendant's substantial rights, well, he's asking for this Court to look at a statute, to add an element that isn't there, and require the United States to prove beyond reasonable doubt to disprove a defense that he not only doesn't assert, but actively opposes. And so as far as clear error goes, and if there was any, had he been harmed by that, if the United States had to prove that, he essentially conceded that, that didn't happen. This isn't a case where, in the alternative, he asked for voluntary manslaughter and then also asked to be found not guilty. This is straight up a case where he absolutely denied everything as it relates to voluntary manslaughter and heat of passion. And what's your best case for what you just, the proposition you just said, or best cases where it really focuses on the fact that he abandoned or disclaimed the defense that's giving us, or at least giving me so much trouble here? You know, it goes just towards plain error. I think our best... So there's not one probably, right? And I'll speak it to that, is that this, these 1111, 1112 statutes aren't terribly common. So we notify this circuit split. Loftin is the 10th circuit, Lacina is the 9th circuit, and Molina-Uribe is the 5th circuit. And the 5th circuit really goes into this analysis in depth and really takes issue with the fact that Mulaney, which is where the error claims to come from, is dealing with the state statutory scheme that has burden shifting, and that's not here. And Molina-Uribe really makes four points. First, that there's not this burden shifting framework in the federal statutes. Nowhere in 1111 or in 1112 is there any shifting going on where the defendant has to prove anything. Second, as noted in the Patterson v. New York case, part of the problem with Mulaney was that malice in that case was described in the disjunctive and defined in the disjunctive at the trial court in Maine to be the absence of sudden provocation. So malice in that case was the opposite. And so here in the federal context, malice is not described that way. Malice is not described as the absence as of a sudden heat of passion. Third, Molina-Uribe noted that the jury was instructed to consider all of the evidence. And here it's exactly the same. The jury considered all of the evidence. There was not a single piece of evidence that the jury were instructed not to consider. So that goes back to the Martin v. Ohio case. And finally, Molina-Uribe noted that there was a jury instruction on voluntary manslaughter and heat of passion, and the government bore the burden beyond reasonable doubt to prove that. And here it's exactly the same. There's no burden put on the defendant to do that. I would also note there was some discussion about closing arguments. The defendant did not assert the heat of passion defense. His whole idea was that he did not do it at all. And the government asked for this. Actually, the way it came up in the trial court was the district court proposed to the parties, is there a lesser included voluntary manslaughter case here? And the government did not oppose it. And then the district court said, well, one of you needs to move for it. And so the United States then moved for it, asked for voluntary manslaughter instruction. But at closing arguments, the United States said this is not heat of passion. This was done willfully and intentionally under second-degree murder. All right. Your argument essentially is that no matter what we decide about the legal issue, that in the end, that the defendant is never able to show that whatever ruling was made, if it's error, it's not plain error because it never seriously affected the fairness, integrity, or the public reputation of the judicial proceedings. That it just, it fails on the second part of the plain error analysis. Yeah, that's the very last prong, but it fails in every single prong. The first is that there's an error. But if we might disagree on that, if we said, yeah, we think maybe there's an error, you know, if we did that, you know, he can't ever get past the third prong anyhow. No, he can't. He can't get past the second prong either. That is a clear and obvious error. He's citing Melania v. Wilbur, a nearly 50-year-old case, dealing with a statutory scheme that is incredibly unique and trying to analogize it here. And for asking that the district court judge should have sua sponte, come out with this additional element that is not included in the second-degree murder statute. So if I'm sitting down to write this opinion, I have to go through and I have to decide, is there or not error? And I have to talk about whether Melania is being properly construed, and if so, is it clear? I can't just like skip right to the last one and just say, oh, by the way, no matter what else happens in this case, you can't ever show an error that affected the fairness or integrity of the proceedings. Goodbye. I think you absolutely can do that. You do not need to go through this complicated analysis like that. The very last prong there of plain error is whether it, you know, affects the integrity of the judicial system. Certainly, it doesn't because in the Fifth Circuit, they ruled the other way. And so there's circuit law out there that is in accordance with how the jury was instructed here. So it certainly doesn't do it that way. And so I agree, Your Honor, this does not have to be an opinion that goes into every single issue like that. But if this Court does want to do that, I still believe that we win in that regard because here, Melania simply does not apply to the federal homicide statutes. Thank you. Barring further questioning by the Court, the United States respectfully requests that the convictions be affirmed in all respects. Very good. Thank you. For a rebuttal? So, Counsel, is there or is there not a circuit split? There's not a circuit split on this issue. Run me through that again, would you? Melina, your ribe does not discuss a step instruction, and it recognizes that if they're under Martin, you have to have them considered at the same time. Also, the second point of Melina, your ribe, saying that malice and heat of passion don't contradict each other, that's not the law of this circuit, and so it's misapplying that. And that gets cleared up in Brewer, or Browner, excuse me. Browner clears that up for the Fifth Circuit. That sounds to me like a circuit split. No, Browner cleans it up. And the Eighth Circuit, the law that applies here in this case, has been since Beardsley, since Eagle Elk, since that line of cases, Bordeaux. Those line of cases, malice and heat of passion contradict each other. That's the law that had to apply here. That wasn't delineated in the history instructions. Further, the step instruction heightens that problem and creates the Martin problem. The government is just wrong about that. Plain error. I mean, I think Judge Erickson suggested there's a conceivable opinion, or maybe counsel suggested it in response to where we would simply rule on no plain error here. Because whatever happened, whatever legal errors may have occurred, the defendant here ran as fast as he could away from the problematic issue, and that is the heat of passion. I think that is a misunderstanding of the distinction between a lesser-included offense and an affirmative defense. A lesser-included offense, which is being alleged by the government, and an affirmative defense, or a defense raised by— Was it alleged by the government here? Yes. Because as counsel just told you, the theory of the government was that he was motivated by the accusations, which is not sudden, you know, heat of passion. As it's described, he found that information out during this encounter, and the district judge said this happened very quickly. The district judge said that, right? But did the defendant ever say that? And did the government, was that its case? That's the weird dynamic here, right? As the government described it, they didn't want this lesser-included offense. The defendant didn't ask for it. And at closing argument, no one seemed to advocate for it. The problem is that position that you're taking shifts the burden to the defendant to raise these issues, shifts the burden to the defendant to argue against these issues, and shifts the burden to— Now, wait. The burden to raise an issue is different than the burden of proof. The burden to raise an issue is on the defendant. If the government doesn't prove — if the government proves its case otherwise— Either party can raise a lesser-included offense under 31C. And the Crawford case. Well, I just heard the government was the one that proposed it. It was. That lesser-included offense can be raised by the government. It is not the obligation of the defendant to argue for or against that lesser-included offense. The defendant doesn't have to prove anything. And the government just told you that its case was premised on this essentially heat of passion. He found out about the molestation or accusations of molestation that motivated the killing. In that sense, the government is bootstrapping voluntary manslaughter into second-degree murder, but asking the jury to distinguish between the two when the instructions didn't provide that. Was there evidence of a sudden quarrel in the record? Yes. Yes. And what evidence specifically? That was in April's testimony. That was in the test— While he was sleeping or when? Well, but that's something for the jury to determine. Because he was blackout drunk. He doesn't remember. That's different than saying these other things. He doesn't remember. We understand the positions. Thank you, Your Honors. I see my time has run out. We ask for the relief identified earlier at the beginning of my speech. Thank you.